# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-266V

|  |  |
|---|---|
| AMBER SCOTT,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: March 27, 2026 |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Camille Jordan Webster, U.S. Department of Justice, Washington, DC, for Respondent.*

**DECISION AWARDING DAMAGES**[1]

On February 21, 2024, Amber Scott filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") due to an influenza ("flu") vaccine administered on December 2, 2022. Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters, and although Respondent ultimately conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, I find that Petitioner is entitled to compensation in the amount of **$50,000.00, for actual pain and suffering.**

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Hum. Servs.*, 109 Fed. Cl. 579 (2013).

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussions in Section II of *Matthews v. Sec'y of*

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

2

*Health & Hum. Servs.*, No. 22-1396V, 2025 WL 2606607, at *2-3 (Fed. Cl. Spec. Mstr. Aug. 13, 2025).

## II.      The Parties' Arguments

The only element of damages sought by Petitioner is actual pain and suffering, but the parties disagree as to the amount. Resp. at 2, n.1. Petitioner seeks $72,000.00 (Br. at 1), while Respondent proposes a lesser sum based on a range of prior awards ($46,000.00 - $60,000.00) for a "mild to moderate" SIRVA. Resp. at 8-10.

In defense of her proposed sum, Petitioner describes her course of treatment, including her decision to seek treatment within 40 days of vaccination. Br. at 7. She notes that she was "immediately" given a cortisone injection and diagnosed with adhesive capsulitis at that time. *Id.* (internal citations omitted). Petitioner states that her course of treatment thereafter included an MRI (showing tendinosis, edema, and subacromial bursitis), seven physical therapy ("PT") sessions, two additional steroid injections (three total), and orthopedic visits through August 1, 2023 – during which time the possibility of surgery was discussed. *See id.* Petitioner also notes that while her pain has decreased following treatment, at two years post vaccination she still experiences "dull achy pain every day and has limited range of motion [("ROM")]." *See id.* at 7-8; *see also* Ex. 8 at 2.

Although she acknowledges her medical records do not contain many pain ratings (Br. at 7), Petitioner attests – in a declaration drafted in support of her Motion for Damages – that about two weeks post-vaccination, her shoulder pain reached an 8-9/10 and remained at a 6-7/10 throughout her treatment with PT. Ex. 8 at 1. Petitioner describes post-vaccination limitations with activities of daily living ("ADLs"), including dressing, sleeping, cooking, and physical activities (i.e., mountain bike riding). *Id.* at 1-3. Petitioner explains that despite ongoing pain following treatment with PT, she "did not want to deal with possible repercussions of surgery" or compensate for the healing time, so she maintained her at-home PT program. *Id.* at 2.

Thus, Petitioner favorably compares the duration and severity of her medical treatment with what was experienced by the petitioners in *Stiller, Hurley, Coluccio, Williams,* and *Smith,*[4] cases featuring past pain and suffering awards ranging between

---

[4] *Stiller v. Sec'y of Health & Hum. Servs*., No. 20-1841V, 2024 WL 4369822 (Fed. Cl. Spec. Mstr. Sept. 3, 2024) (awarding $72,000.000 for past pain and suffering); *Hurley v. Sec'y of Health & Hum. Servs.,* No. 20-1852V, 2024 WL 1529877 (Fed. Cl. Spec. Mstr. Mar. 4, 2024) (awarding $60,000.00 for past pain and suffering); *Coluccio v. Sec'y of Health & Hum. Servs.,* No. 19-1684V, 2022 WL 17849579 (Fed. Cl. Spec. Mstr. Dec. 15, 2022) (awarding $80,000.00 for past pain and suffering); *Williams v. Sec'y of Health & Hum. Servs.,* No. 19-1420V, 2024 WL 914908 (Fed. Cl. Spec. Mstr. Jan. 30, 2024) (awarding $80,000.00 for past pain and suffering); and *Smith v. Sec'y of Health & Hum. Servs.,* No. 21-409V, 2023 WL 9288086 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) (awarding $77,000.00 for past pain and suffering).

$60,000.00 and $80,000.00. Br. at 5-7. She insists that her injury and treatment course warrant a roughly equivalent award in past pain and suffering than most of the petitioners in her cited cases. *Id.* at 7-9.

Respondent, by contrast, vaguely argues Petitioner had a "mild to moderate" injury and a modest award is thus appropriate. Resp. at 5. Unhelpfully, however, Respondent does not specifically address the factual circumstances of Petitioner's injury but rather asserts that the cases she relies upon for support "are distinguishable in terms of the time at which treatment was initially sought and the extent of the corresponding treatment plan." *See id.* at 8-10. As guidance, Respondent briefly cites numerous other decisions featuring pain and suffering awards ranging from $49,000.00 to $60,000.00, respectively – *Stolze, Merwitz, Johnson, Schwalm, Green, Horn, Klausen, Hamilton, Krebs,* and *Aponte.*[5] *Id.* Petitioner did not file any Reply thereafter.

### III.    Appropriate Compensation for Petitioner's Past Pain and Suffering

In this case, awareness of the injury is not disputed. Petitioner was a competent adult with no impairments that would impact her consciousness of her injury. Therefore, I analyze principally the severity and duration of the injury. When performing this analysis, I review the record as a whole, including the medical records and declarations filed, and all assertions made by the parties in written documents.

The record shows that following her vaccination, Petitioner (age 42 at the time) suffered a mildly severe SIRVA causing her to report shoulder-related symptoms within approximately six weeks after vaccination, and to seek consistent treatment for approximately eight months thereafter. She first sought care for left shoulder pain (with a visit to her primary care provider) on January 12, 2023, resulting in an assessment specific to the left shoulder, including "adverse effect of other vaccines and biological substances." *See* Ex. 2 at 4. She received a steroid injection on that date. *See id.*

---

[5] *Stolze v. Sec'y of Health & Hum. Servs.,* No. 21-0964V, 2024 WL 1435684 (Fed. Cl. Spec. Mstr. Feb. 26, 2024) (awarding $49,000.00 for past pain and suffering); *Merwitz v. Sec'y of Health & Hum. Servs.,* No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Nov. 14, 2022) (awarding $50,000.00 for past pain and suffering); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 19-1543V, 2023 WL 3580142, (Fed. Cl. Spec. Mstr. May 22, 2023) (awarding $50,000.00 for past pain and suffering); *Schwalm v. Sec'y of Health & Hum. Servs.,* No. 21-0066V, 2024 WL 1740482 (Fed. Cl. Spec. Mstr. Mar. 21, 2024) (awarding $50,000.00 for past pain and suffering); *Green v. Sec'y of Health & Hum. Servs.*, No. 20-0378V, 2023 WL 6444421 (Fed. Cl. Spec. Mstr. Sept. 1, 2023) (awarding $55,000.00 for past pain and suffering); *Horn v. Sec'y of Health & Hum. Servs.*, No. 21-0398V, 2024 WL 910811 (Fed. Cl. Spec. Mstr. Jan. 30, 2024) (awarding $55,000.00 for past pain and suffering); *Klausen v. Sec'y of Health & Hum. Servs.*, No. 19-1977, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023) (awarding $60,000.00 for past pain and suffering); *Hamilton v. Sec'y of Health & Hum. Servs.*, No. 21-0346V, 2023 WL 4635923 (Fed. Cl. Spec. Mstr. June 14, 2023) (awarding $60,000.00 for past pain and suffering); *Krebs v. Sec'y of Health & Hum. Servs.*, No. 21-484V, 2024 WL 4930680 (Fed. Cl. Spec. Mstr. Oct. 31, 2024) (awarding $60,000.00 for past pain and suffering); and *Aponte v. Sec'y of Health & Hum. Servs.*, No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sept. 2, 2022) (awarding $60,000.00 for past pain and suffering).

Petitioner then received steady but conservative treatment for her left shoulder until August 1, 2023 (thus for a total of seven months and 30 days post vaccination). *See,* e.g., Ex. 4 at 7-8.

Petitioner's treatment for her SIRVA was fairly limited overall, and did not involve surgery. Particularly relevant is her treatment with a total of three steroid injections, an x-ray, an MRI (revealing tendinosis, edema, and subacromial bursitis), seven PT sessions, and a *limited* number of orthopedic (and other) visits compared to what is typically seen in other SIRVA cases in the Program. During Petitioner's last visit in August 2023, while surgery (versus another steroid injection) was discussed as a potential option to address her ongoing symptoms (e.g., pain with *full* ROM and positive impingement signs), Petitioner opted to forego surgery or any other treatment thereafter. Ex. 4 at 7. While I credit Petitioner's statements in her declaration that she experienced residual pain after this time but did not want to grapple with the ramifications of recovering from surgery (Ex. 8), I cannot compare the facts of this case to other SIRVA cases where surgery *did* occur. Still, the filed record establishes an injury that extended through August 2023, with some *mild* residual sequelae not requiring ongoing care. *See,* e.g., Ex. 8 at 2 (describing shoulder pain resulting in ongoing issues with sleeping and physical activities such as bike riding).

Additionally, and consistent with Petitioner's acknowledgement, Petitioner's medical records do not contain many descriptions of her pain on a ten-point scale that would stand as evidence of more severity (in terms of damages). The one record that *does* include such pain ratings supports an otherwise mild injury. For instance, during her initial PT evaluation on March 13, 2023 (thus just over three months post vaccination), she described her pain as a 3-4/10. Ex. 4 at 27. She also notably reported participating in Pilates "4x/week" – thus providing evidence of an injury that was extremely mild just three months post vaccination. *See id.* Petitioner attempts to make up for this omission by assigning pain ratings after the fact in her declaration. *See,* e.g., Ex. 8 at 1 (rating her pain at an 8-9/10 approximately two weeks post vaccination); *id.* at 2 (rating her pain at a 6-7/10 during her treatment with PT). But pain ratings reported after the fact – and especially those that *directly conflict* with the entries in the contemporaneous medical records (i.e., attesting to pain at a 6-7/10 but noting in the medical records pain at a 3-4/10) – are afforded less weight. Added support for a showing of a mild injury comes from medical records showing *minor* ROM limitations, only. *See,* e.g., Ex. 4 at 27-28.

Turning to the parties' cited comparable case law, Petitioner's offered comparable cases are mostly unhelpful in calculating pain and suffering, as they involve injuries that exceed hers in terms of severity and duration. First, both *Williams* and *Coluccio* involved pain and suffering awards *above* Petitioner's requested amount ($80,000.00), and I therefore do not find either case to advance Petitioner's claim for damages. *Williams v.*

*Sec'y of Health & Hum. Servs.,* No. 19-1420V, 2024 WL 914908 (Fed. Cl. Spec. Mstr. Jan. 30, 2024); *Coluccio v. Sec'y of Health & Hum. Servs.,* No. 19-1684V, 2022 WL 17849579 (Fed. Cl. Spec. Mstr. Dec. 15, 2022). And, notably, to support the higher award in *Williams* and *Coluccio,* each of those petitioners sought care sooner than Ms. Scott here (24 and 28 days versus Petitioner's 42), and they both underwent *more than double* the amount of Petitioner's treatment with PT (19 versus seven sessions) within roughly the same timeframe of treatment (approximately seven and a half to eight months). *See* 2024 WL 914908; *see also* 2022 WL 17849579. I thus find an award much less than $80,000.00 to be appropriate in this case.

Similarly, Petitioner's reliance on *Smith* is somewhat misplaced, as that petitioner sought care within 28 days of vaccination and treated for over a year-and-a-half thereafter. *Smith v. Sec'y of Health & Hum. Servs.,* No. 21-409V, 2023 WL 9288086 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) (awarding $77,000.00 for past pain and suffering). The *Smith* petitioner's course of treatment included two additional PT sessions compared to Ms. Scott (nine versus seven), but the *Smith* petitioner only received one steroid injection, whereas Ms. Scott received three. *See* 2023 WL 9288086. These differences are thus roughly equivalent. However, their courses differ in that the *Smith* petitioner treated with prescription medications, underwent several acupuncture sessions, and rated her pain higher on a ten-point scale in the contemporaneous medical records (5/10). *See id.* Given the greater duration and severity of the *Smith* petitioner's pain, Ms. Scott should receive less than the $77,000.00 awarded in *Smith.*

Along the same lines, in *Stiller* (the only cited comparable case in which Petitioner's requested sum of $72,000.00 was awarded), the petitioner sought care extremely close in time to vaccination (within two weeks) and treated for a total of 15 months (albeit with a six-month gap in care), thus substantiating a more severe injury. *Stiller v. Sec'y of Health & Hum. Servs.,* No. 20-1841V, 2024 WL 4369822 (Fed. Cl. Spec. Mstr. Sept. 3, 2024). Nonetheless, the *Stiller* petitioner's treatment course closely resembled Petitioner's, including an MRI, two steroid injections, and nine sessions of PT. *See* 2024 WL 4369822. While Petitioner's reliance on this case is more helpful than her other cited cases, it alone is not extremely helpful in ascertaining damages. Indeed, *Stiller* was decided outside the SPU, by another special master; I have often noted that cases decided by other special masters (and those outside of the SPU), are deserving of slightly less weight in assessing damages in SPU cases, since they can reflect one-time, outlier constructions of an individual's experience that do not fully take into account how comparable individuals are compensated in SPU cases.

The final case Petitioner relies upon for support of her damages demand, however – *Hurley* – is more applicable to the facts of the instant case, and notably is in line with the upper range of Respondent's proposed sum ($60,000.00). *Hurley v. Sec'y of Health*

*& Hum. Servs.,* No. 20-1852V, 2024 WL 1529877 (Fed. Cl. Spec. Mstr. Mar. 4, 2024). But I find the amount therein too high of an award to apply to the instant case. The *Hurley* petitioner and Ms. Scott both treated for approximately eight months, with a limited number of medical appointments. *See* 2024 WL 1529877. While both received somewhat comparable treatment, including eleven PT sessions and one steroid injection in *Hurley,* versus seven PT sessions and three injections in Ms. Scott's case, the petitioner in *Hurley* sought care *much* sooner than Petitioner here (within eleven days of receipt of the vaccine) and therefore was successful in establishing a more severe injury – albeit barely. *See id.* Petitioner is thus deserving of a slightly lesser award.

The cases cited by Respondent provide much more useful comparisons and thus serve as helpful indicators for an award that appropriately compensates for Ms. Scott's circumstances. Nonetheless, as noted above, Petitioner deserves less than the $60,000.00 awarded in most of Respondent's cited cases.

In *Klausen*, for example, although the petitioner delayed seeking care for four months, that petitioner treated for approximately *two years*, during which time *Klausen* underwent five steroid injections and 16 sessions of PT – thus considerably more care over a longer duration than Ms. Scott. *Klausen v. Sec'y of Health & Hum. Servs.*, No. 19-1977, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023). On the other hand, while the *Aponte* petitioner sought care within one week of vaccination, and much of that petitioner's symptoms had resolved within seven-and-a-half months of treatment (though she later returned to care following a lengthy gap), the *Aponte* petitioner nonetheless received more care than Ms. Scott in approximately similar timeframes, including attending 16 sessions of PT and receiving one steroid injection. *Aponte v. Sec'y of Health & Hum. Servs.*, No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sept. 2, 2022).

More so, while the petitioner in *Hamilton* treated for a comparably similar duration to Ms. Scott (nine months versus eight months), that individual treated with 31 PT sessions (albeit via telehealth) and was thus entitled to a larger sum than what is justified here. *Hamilton v. Sec'y of Health & Hum. Servs.*, No. 21-0346V, 2023 WL 4635923 (Fed. Cl. Spec. Mstr. June 14, 2023). And, even though Ms. Scott received the same number of steroid injections as the petitioner in *Krebs*, and attended more PT (seven versus two sessions), the award in *Krebs* was larger in light of that petitioner's 18-month course. *Krebs v. Sec'y of Health & Hum. Servs.*, No. 21-484V, 2024 WL 4930680 (Fed. Cl. Spec. Mstr. Oct. 31, 2024). Petitioner here should thus be awarded less than the highest end of Respondent's proffered sum.

Additionally, other cases on which Respondent relies for support (*Green* and *Horn*), do not provide sufficiently adequate comparisons to the facts of Petitioner's case. *Green v. Sec'y of Health & Hum. Servs.*, No. 20-0378V, 2023 WL 6444421 (Fed. Cl. Spec.

Mstr. Sept. 1, 2023); *Horn v. Sec'y of Health & Hum. Servs.*, No. 21-0398V, 2024 WL 910811 (Fed. Cl. Spec. Mstr. Jan. 30, 2024). For instance, in *Green*, the petitioner treated for nearly three years, albeit with some unexplained gaps. *See* 2023 WL 6444421. The *Green* petitioner's course included one steroid injection, 20 sessions of PT, and four chiropractic sessions. *See id.* Ms. Scott's course was comparably less aggressive and lengthy. Likewise, the *Horn* petitioner sought care much sooner than Petitioner (i.e., within 17 days of vaccination) and the injury persisted for approximately 15 months. *See* 2024 WL 910811. The *Horn* petitioner's care itself was extremely mild, including one steroid injection and prescription medications, only, but because the course of treatment was longer in *Horn*, Ms. Scott is entitled to a slightly lesser award than the $55,000.00 awarded in *Green* and *Horn*.

I find Ms. Scott's circumstances to fall in line with those in *Merwitz*, *Johnson*, and *Schwalm*, in which $50,000.00 was awarded for pain and suffering. The petitioner in *Merwitz*, for example, like Ms. Scott, treated for approximately eight months. *Merwitz v. Sec'y of Health & Hum. Servs.,* No. 20-1141V, 2022 WL 17820768 (Fed. Cl. Spec. Mstr. Nov. 14, 2022). The *Merwitz* petitioner's injury was otherwise mild, in that she received one steroid injection and attended 17 sessions of PT. *See* 2022 WL 17820768. Although the petitioner in *Merwitz* required the use of prescription medications (Meloxicam) to manage the degree of the symptoms – thus speaking to a more severe injury than Petitioner here who did not appear to require prescription medications – the *Merwitz* petitioner delayed seeking care for three months, whereas Petitioner sought care within just over a month of vaccination. *See id.* Petitioner is therefore entitled to an equivalent award.

More so, the petitioner in *Schwalm* delayed care for nearly four months post vaccination but then consistently treated for 16 months, thus double the length of Petitioner's eight-month course. *Schwalm v. Sec'y of Health & Hum. Servs.,* No. 21-0066V, 2024 WL 1740482 (Fed. Cl. Spec. Mstr. Mar. 21, 2024). During that time, the *Schwalm* petitioner received one steroid injection, treated with prescription medications, and attended eleven PT sessions – roughly the same amount of care Petitioner received. *See* 2024 WL 1740482. And, in *Johnson*, though the petitioner did not receive any steroid injections and attended minimal PT (two sessions), that petitioner treated with prescription medications (prednisone) and numerous acupuncture sessions over a two-year period (albeit with some gaps). *Johnson v. Sec'y of Health & Hum. Servs.,* No. 19-1543V, 2023 WL 3580142, (Fed. Cl. Spec. Mstr. May 22, 2023).

On the other end of the spectrum, the award of $49,000.00 reflected in *Stolze* is not quite applicable here, and is notably higher than the lowest amount in the range of cases proffered by Respondent (*$46,000.00* to $60,000.00). The *Stolze* petitioner experienced an admittedly minor injury, rating the pain at a 1-2/10 in the

contemporaneous medical records. *Stolze v. Sec'y of Health & Hum. Servs.,* No. 21-0964V, 2024 WL 1435684 (Fed. Cl. Spec. Mstr. Feb. 26, 2024). The *Stolze* petitioner delayed care for two months post vaccination, and that petitioner's care did not include any steroid injections, though it did include some PT and prescription medication. Ms. Scott is therefore deserving of a minimally higher award.

**Thus, I find that $50,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**

## CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $50,000.00, (representing compensation for actual pain and suffering) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.